STATE of Iowa, Appellee,

v.

Bruce A. KILLPACK, Appellant.

No. 62361.

Supreme Court of Iowa.

March 21, 1979.

Michael A. Sciortino, of Walter & Sciortino, Council Bluffs, for appellant.

Thomas J. Miller, Atty. Gen., and Ann Fitzgibbons, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C. J., and REES, UHLENHOPP, McCORMICK and McGIVERIN, JJ.

McGIVERIN, Justice.

Defendant Bruce A. Killpack appeals his conviction and sentence under a plea-bargained plea of guilty to conspiracy to commit a forcible felony, to wit: robbery, in violation of section 706.1, Code Supp. 1977. We affirm.

Originally Killpack had been charged with robbery in the second degree based on the January 14, 1978 robbery of a service station attendant. Defendant pled guilty to that offense under a plea bargain in which the State agreed not to seek the mandatory minimum penalty of five years in prison under section 907.7. Defendant, however, was allowed later to withdraw his guilty plea when counsel for the prosecution and defense discovered the court had no discretion to grant probation in a robbery case. See sections 702.11, 711.1, 711.3 and 907.3.

In a second guilty plea proceeding, conducted two and one-half months after the original proceeding, defendant entered a plea of guilty to conspiracy to commit a forcible felony. At that time the presiding judge alluded to the prior guilty plea and its subsequent withdrawal before endeavoring to make a record on the guilty plea to the substituted charge.

In this appeal defendant contends: that the guilty plea upon which his ultimate conviction was based is invalid on various grounds; that he did not receive effective assistance of counsel; and that he should have received probation.

■ I. *Preservation of error.* The State contends at the outset that defendant waived his right to challenge the adequacy of his guilty plea proceedings because he did not comply with the requirements of *State v. Reaves,* 254 N.W.2d 488 (Iowa 1977). In *Reaves* we held that future appeals challenging the adequacy of guilty plea proceedings must be preceded by presentation of the claim to the trial court in a motion in arrest of judgment under chapter 788, The Code 1977. *Id.* at 493.

Although on August 21 defendant filed a motion in arrest of judgment after sentence, he only challenged his sentence and did not raise the other issues on which he now relies. Because his motion in arrest failed to raise the remaining claimed inadequacies in the guilty plea proceeding, the State contends defendant waived these issues. However, we recently held in *State v. Gardner,* 274 N.W.2d 328, 329 (Iowa 1979), the procedural rule promulgated in *Reaves* does not apply to guilty pleas taken under the present Code.

The State's contention is without merit. We now proceed to consider the issues raised by defendant.

■ II. *Sufficiency of the trial record.* Defendant asserts that trial court both failed to adequately advise him with regard to a specific element of the offense charged and failed to determine the existence of a factual basis for that element. These contentions center on trial court's handling of the element of intent. Relying on *State v. Ohnemus,* 254 N.W.2d 524 (Iowa 1977), defendant claims that, upon eliciting information which showed intoxication, trial court was obligated to either further question him or disallow the guilty plea. Cf. *State v. Heinen,* 252 N.W.2d 454, 455 (Iowa 1977) (no duty to inquire into wisdom of the plea or possible defenses where evidence shows intoxication).

In *State v. Ohnemus* we reversed a guilty plea conviction where the court failed to make any inquiry into intent, while accepting a plea of guilty to the charge of entering a dwelling in the nighttime with intent to commit a public offense. The record,

furthermore, was devoid of "any statement which even minimally manifested" intent. Indeed, the *Ohnemus* defendant made record statements denying he had been possessed of criminal intent. *Id.* at 524–525.

The *Ohnemus* decision represents an application of the now familiar guilty plea guidelines set out in *State v. Sisco*, 169 N.W.2d 542, 549 (Iowa 1969) and *Brainard v. State*, 222 N.W.2d 711, 722–723 (Iowa 1974). However, we do not find *Ohnemus* controlling in either aspect of this two-pronged guilty plea challenge. Although trial court failed to specifically explain the essential element of intent, we have never required discussion of each essential element. *State v. Hansen*, 221 N.W.2d 274, 276 (Iowa 1974); *Michels v. Brewer*, 211 N.W.2d 293, 296 (Iowa 1973). The record herein, furthermore, surpasses that which was deemed constitutionally insufficient in *Ohnemus*.

The record shows the following dialogue between defendant and trial court:

And upon leaving the bar, we decided to go back the way we came, toward Missouri Valley, which took us by the Armstrong Standard station. And upon approaching the station we parked the truck outside of the station about half a block. And myself and Mr. Moore went up to the station and went inside the building. And Mr. Moore had bound up the attendant. At the time, I had a starting gun with me. And a car drove in shortly after that, and we left the station and proceeded back to Missouri Valley.

THE COURT: Did you show that starting gun to the attendant?

THE DEFENDANT: Yes.

THE COURT: Was that for the purpose of obtaining something of value from him?

THE DEFENDANT: Yes, I suppose you could.

THE COURT: Pardon?

THE DEFENDANT: Yes, I suppose you could.

THE COURT: Do you have any reservations about that? Did you show him

the gun? Did you persuade him to do anything, give you money or give you anything else of value?

THE DEFENDANT: No. He just saw it. It was no forcible act with it or anything.

THE COURT: Well, was that the purpose of showing it to him?

THE DEFENDANT: Yes, sir.

Although defendant claimed to have been "drinking pretty heavily" early on the night of the offense, there was sufficient evidence in the entire record both to show his understanding of the charge and establish a factual basis for the plea.

Defendant's contention is without merit.

■ III. *Right to jury trial.* Defendant next asserts the court failed to properly advise him that he had the right to a jury trial prior to acceptance of the guilty plea. Defendant's claim is premised on Iowa R.Crim.P. 8.2(b)(3), which requires that trial court, before accepting a plea of guilty, inform the defendant he "has the right to be tried *by a jury.*" (Emphasis added.)

Rule 8.2(b)(3) serves to satisfy the constitutional requirement of *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279–280 (1969), that the record demonstrate defendant's waiver of three constitutional rights. The *Boykin* court said:

Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. [Citation] *Second, is the right to trial by jury.* [Citation] Third, is the right to confront one's accusers. [Citation] We cannot presume a waiver of these three important federal rights from a silent record. (Emphasis added.)

Rule 8.2(b)(3) is newly enacted; however, we have long recognized the importance of developing a record demonstrating waiver of the right to a trial by jury. In *State v.*

*Sisco* we adopted the American Bar Association Minimum Standards for Criminal Justice relevant to guilty plea proceedings. Those standards included a requirement that defendant be advised his guilty plea waives the right to trial by jury. 169 N.W.2d at 547–548. Later, in *Brainard v. State*, we established lengthy guidelines for acceptance of guilty pleas and recognized the guilty plea proceeding must "demonstrate that the defendant was actually aware" of his constitutional right to trial by jury. 222 N.W.2d at 717, 722–723.

Although trial court made several allusions to defendant's right to trial, the court did not specifically state to defendant that he was entitled to a *jury* trial. The record however, evidences additional references to the *jury's* function. In the record we find the following discussion:

THE COURT: If the Court accepts the plea of guilty, the only thing remaining to be done, then, is to impose judgment. You have no *trial* and no further proceedings in the matter. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: If you desire to have a *trial*, you would be entitled to a trial within 90 days of this date. You'd be entitled to Court-appointed counsel if you cannot afford to pay for your defense at the trial.

If you were convicted at the *trial*, you would have the right to have an attorney paid for at public expense on an appeal.

. . .

If you desired to have a *trial*, the presumption of innocence would prevail as far as you were concerned all the way through the *trial*. The burden of proof would be on the State of Iowa to prove beyond a reasonable doubt each of the elements of the offense charged. . .

THE DEFENDANT: Yes.

THE COURT: If they fail to prove either one or more of those elements, the *jury* would be instructed to return a verdict of not guilty.

Later, the court stated:

THE COURT: You should understand that the burden of proof would be on the State to prove the elements of the agreement, conspiracy. Also, the subject matter of that conspiracy, which would be, in this case, robbery. If they failed to prove either one or more of those elements, the *jury* would be required to return a verdict of not guilty. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You'd have the right through your attorney to confront and cross-examine any of the witnesses called by the State, make them testify under cross-examination as to any of the facts claimed by them. In addition, you would have the right through the subpoena power of the Court to require the attendance of witnesses in your behalf if you desired to have them. You would not be required to produce any evidence, because you have the presumption of innocence.

You also have the privilege against self-incrimination, which means you could not be required to testify in your own behalf. In addition, if your attorney requested it, the Court would be required to instruct the *jury* that your failure to testify could, in no way, by no means, and in no context, be considered by the *jury* to be an admission of your guilt. They would be instructed that your failure to testify could not be considered by them in any respect. Do you understand that?

THE DEFENDANT: Yes.

(Emphasis added.)

While we do not believe the indirect manner in which defendant's jury trial right was conveyed is the best method to inform defendant of his right, we do believe the above discussion shows defendant was sufficiently advised of his right to trial by jury and the record adequately shows he was actually aware he had that right.

Defendant's second contention is without merit.

IV. *Ineffective assistance of counsel.* In his third assignment of error, defendant contends he was denied effective assistance of counsel on a variety of grounds. Defendant points to defense counsel's confusion on sentencing underlying the first guilty plea which was subsequently withdrawn. Defendant also maintains counsel's advice, that a jury trial would very probably result in conviction of robbery and subject him to a minimum mandatory sentence based on involvement of a firearm, coerced him into pleading guilty. Finally, defendant claims counsel misled him into pleading guilty when he lacked the requisite criminal intent due to his intoxication.

 In evaluating claims of ineffective assistance of counsel we follow the "range of normal competency" standard. *State v. Veverka,* 271 N.W.2d 744, 750 (Iowa 1978); *State v. Rand,* 268 N.W.2d 642, 648 (Iowa 1978). Defendant bears the burden of proving ineffective assistance of counsel. *State v. Veverka,* 271 N.W.2d at 750; *State v. Rand,* 268 N.W.2d at 648.

 Application of these principles to defendant's allegations fails to reveal any constitutional deprivation. We have cautioned that effective assistance of counsel "does not mean every mistake in judgment or error in trial strategy by an attorney serves to deprive an accused of a constitutional right." *Long v. Brewer,* 253 N.W.2d 549, 558 (Iowa 1977). We cannot say counsel's advice to forego a jury trial, which carried with it the risk of a minimum mandatory sentence, fell without the range of normal competency. Although there was some evidence of intoxication, the decision not to assert that defense at trial was a strategic decision which should not provide grounds for reversal. *State v. Veverka,* 271 N.W.2d at 750; *State v. Rand,* 268 N.W.2d at 649. Counsel did proceed into the first guilty plea under an erroneous understanding of the penal consequences. However, that error was clearly acknowledged on the record and, in fact, provided the basis for withdrawal of the plea. Defendant's second plea, upon which his conviction is based, was entered on apparently accurate advice regarding penalty.

Defendant's third contention is without merit.

V. *Propriety of sentence imposed.* In his final assignment of error defendant asks this court to exercise our authority to reduce the punishment imposed, grant probation and adopt the American Bar Association Standards of Appellate Review of Sentencing.

We have been asked to adopt the ABA standards on various occasions and have refused to do so. *State v. Hubbs,* 268 N.W.2d 188, 191 (Iowa 1978); *State v. Moreland,* 252 N.W.2d 465, 466 (Iowa 1977); *State v. Smith,* 244 N.W.2d 325, 326 (Iowa 1976); *State v. Peckenschneider,* 236 N.W.2d 344, 348 (Iowa 1975).[1] In *Peckenschneider* we held our review of sentencing was sufficient without adoption of the ABA standards. *Id.* at 348. At that time the Code required trial court to set out reasons for granting probation, although no concurrent duty existed with respect to imposition of incarceration. *See* § 789A.1, The Code 1975. Since our decision in *Peckenschneider,* however, the legislature has imposed a duty on trial courts to set out reasons for imposition of all sentences.

Iowa R.Crim.P. 22(3)(d) now requires "[i]n every case the court shall include in the judgment entry the number of the particular section of the Code under which the defendant is sentenced. *The court shall state on the record its reason for selecting the particular sentence.*" (Emphasis added.) Although this requirement is less particularized than the requirement specifically addressed to probation, *see* § 907.5, Code Supp. 1977, it does, nevertheless, provide for an enlarged record for appellate review. This requirement of a statement of reasons for imposing sentence addresses, at least in part, the problems of appellate review of

---

1. Our refusal to adopt the ABA Standards has not been without dissent. See *State v. Peckenschneider,* 236 N.W.2d at 348–356.

sentencing perceived by advocates of adoption of the ABA standards. *See Schantz, Survey of Iowa Criminal Law*, 26 Drake L.Rev. 116, 151–152 (1976–1977).

In view of the recent addition of the Code requirement of record reasons for imposition of sentence, we decline to adopt the ABA Standards for Appellate Review of Sentencing. Our review of defendant's sentence, nevertheless, is authorized under section 814.20, Code Supp. 1977.

We have said granting of probation is a matter of trial court's broad discretion. We will interfere only upon a finding of abuse of that discretion. *State v. Buck*, 275 N.W.2d 194, (Iowa 1979); *State v. Rogers*, 251 N.W.2d 239, 243 (Iowa 1977); *State v. Peckenschneider*, 236 N.W.2d at 348. Under the present record trial court, in compliance with rule 22(3)(d), indicated defendant had previously received probation on an earlier offense without apparent rehabilitative success. The court also noted the serious nature of the crime presently charged. We cannot hold there has been an abuse of discretion.

We have reviewed all of defendant's contentions and affirm the trial court.

AFFIRMED.

All Justices concur except REYNOLDSON, C. J., who concurs in the result and McCORMICK, J., who concurs specially.

McCORMICK, Justice (concurring specially).

I concur in the result and the court's opinion except for its refusal to adopt ABA Standards, Standards Relating to Sentencing Alternatives and Procedures, sections 2.2 and 2.5(c) (1968), and Standards Relating to Probation, section 1.3 (1970).

In *State v. Cupples*, 260 Iowa 1192, 1197, 152 N.W.2d 277, 280 (1967), this court committed Iowa courts to the concept of individualized sentencing. We are charged with the duty to review sentences when they are challenged. Now trial judges must give their reason for selecting a particular sentence. Iowa R.Crim.P. 22(3)(d).

However, unless we delineate standards by which trial judges are to be guided in selecting an appropriate sentence, the propriety and sufficiency of the judge's reasons must await appellate review on an *ad hoc* basis. Adopting the ABA standards would be a small but beneficial step toward providing necessary guidance. It would encourage uniformity in sentencing practices and assist us in review.

I regret that the court is so reluctant to recognize the merit in the objective standards recommended after exhaustive and careful study by the ABA. *See State v. Peckenschneider*, 236 N.W.2d 344, 348–56 (Iowa 1975) (dissenting opinion). This reluctance is puzzling in view of frequent public criticism of disparity in sentencing.

Fortunately trial courts are in fact following the standards in increasing numbers, and I believe the record shows the trial court did so here. Probation was considered and rejected because confinement appeared to be necessary in view of defendant's prior record and in order not to depreciate the seriousness of the offense unduly. These reasons are appropriate, supported by the record, and sufficient.